UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 2:14 CR 111 |
| V. | ) |
| KEVIN FORD | ) |

GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States, through Assistant United States Attorney Diane L. Berkowitz, and files the following sentencing memorandum regarding defendant Ford:

Defendant Ford does not merit receiving the additional point for acceptance

1.   Defendant objects to paragraph 48 of the PSR because he did not receive an additional 1 point for acceptance of responsibility.  Defendant offers no reason why he is entitled to this extra point.  The government on the other hand can point to several reasons why defendant is undeserving of any further guideline reduction based on acceptance of responsibility.

Following his indictment, defendant Ford was placed on pre-trial release with the condition that he was prohibited from using social media.  Despite this restriction, which was clearly spelled out to him by the magistrate, defendant continued to use social media to promote, among other things, fundraisers for his criminal defense.  (Dkt 110)  Only after making posts on social media did the defendant seek to modify the conditions of his pre-trial release.  Despite the fact

that the court reaffirmed its prohibition on the use of social media defendant Ford ignored the prohibition and continued his postings. (Dkt. 110)  When the matter was heard before the district court defendant showed up approximately one hour late for the hearing.  Finally, it has recently come to the government's attention that even after being indicted on the instant charges defendant entered into a business deal with an employee of a Chicago check cashing business whereby the employee would photograph checks and routing numbers and provide the defendants with those screen shots in exchange for cash.

For all of the above reasons, defendant does not merit receiving an additional point for acceptance of responsibility.  Defendant Ford's total  offense level should be 21.

<u>Banks were not the only victim in the cracking card scheme</u>

2.   The government acknowledges that typically people gave defendant and co-conspirators their debit cards in exchange for the promise of easy cash.  In the case of minor child BM, however, the debit card she possessed was issued to her under the auspices of her father, who was also a signatory on the account.  The card was stolen from BM by defendant Cortez Stevens, not given in exchange for money.  A police report was filed by BM and her father regarding the theft.   Neither BM nor her father, CJ, authorized defendant Steven's use their bank account or debit card to commit fraud.

<u>Defendant was an admitted member of and participant in RACK BOYZ criminal behavior</u>

3.  In his response to the PSR defendant seems to suggest that any reference he made in his rap videos to being a member of the RACK BOYZ or cracking cards was artistic license and not factual. Defendant Ford, however, admitted to the FBI when he was interviewed back in August 2012 that he was indeed a member of the RACK BOYZ and that he purchased counterfeit checks and received debit cards.

<u>Defendant's use of social media warrants a mass marketing enhancement</u>

4.  Defendant's fraud strategy was simple and effective. Through mass marketing outlets such as Facebook defendant lured prospective co-conspirators into giving him their debit cards and PINs in exchange for cash. Access to legitimate bank accounts provided defendant with multiple conduits into which the phony checks he created could be deposited thereby increasing the success and productivity of the scheme. Defendants and his co-conspirators referred to their actions as "cracking cards". The ultimate victims of the cracking cards scheme were the banks whose customers conspired with defendant by handing over their debit cards and PIN numbers. The government believes defendant's use of social media in this manner warrants the application of a mass marketing enhancement under 2B1.1(b)(2)(A)(ii).

Defendant objects to this enhancement because he sees its application as limited to schemes in which the mass marketing is directed to the victims not the participants. The Seventh Circuit has not specifically addressed the question of whether or not a mass marketing enhancement can be applied where the targets of

the marketing are not the actual victims[1].  Other circuits, however, have addressed this issue.

In *United States v. Lacey, 699 F.3d 710 (2nd Cir. 2012)*, the Second Circuit overturned a trial court's application of the mass marketing enhancement in a mortgage fraud case where the district court held that the enhancement applied even though the mass marketing was not directed to the ultimate victims of the fraud (the banks that made the loans) because it was relevant conduct to the offense.  The *Lacey* court remanded the case for the district court to make findings as to whether the defendant engaged in mass marketing within the meaning of the relevant Guideline, as interpreted by the commentary and if the defendant did engage in mass marketing whether the consumers who were the target of the mass-marketing were also in some sense victims of the overall criminal scheme.[2]

In his lengthy dissent from the *Lacey* majority opinion, Judge Straub stated that the majority focused on the wrong aspect of the guideline provision relating to mass marketing.  According to Judge Straub the focus should be on the term offense rather than on the term "committed through".  The term "offense" encompasses all relevant conduct including all reasonably foreseeable acts of others in furtherance of

---

[1] In *United States v. Heckel, 570 F.3d 791(7th Cir. 2009),* the Seventh Circuit affirmed the application of a mass marketing enhancement in a fraud case  where the defendant sought to increase the price of  items posted on an internet auction site by soliciting a large number of bids over the internet. The defendant challenged the application of this enhancement by asserting that an auction can have only one victim and the guideline regarding mass marketing contemplates that a "large number of persons…purchase goods and services".  According to the defendant the limited pool of actual victims in his case defeated the application of the enhancement.   The Seventh Circuit rejected defendant's citing with approval a 10th Circuit case, *United States v. Fredette, 315 F.3d 1235, 1244 n.4 (10th Cir. 2003)*"The enhancement for multiple victims goes to the ultimate harm caused by the defendant's conduct, while the enhancement for mass-marketing concerns the scope and sophistication of the defendants fraud".
[2] The Fifth Circuit has taken a similar approach to applying the mass marketing enhancement in mortgage fraud cases  where the fraud was committed on the lenders not the borrowers. *See, United States v. Miller, 588 F.3d 560 (8th Cir. 2009).*

the criminal activity. Therefore, the defendants use in *Lacey* of radio advertisements qualified as mass marketing because the ads were designed to build up a portfolio of buyers who would apply for and obtain mortgages through fraudulent loan applications. Judge Straub concluded that given the broad definition of the term "offense" under the Sentencing Guidelines a mass marketing enhancement was properly applied in a mortgage fraud case without determining that the targets of the mass marketing were also victims.

Judge Straub's line of thinking is more consistent with the position taken by the Fifth and Eleventh Circuits. In *United States v. Moran, 778 F.3d 942 (11th Cir. 2015),* the defendants challenged the mass marketing enhancement in a health care fraud case by arguing that the target of the fraud was Medicare not the beneficiaries. The *Moran* court rejected that argument noting that it was not the identity of the victim that controlled the application of the enhancement but whether the mass marketing was reasonably foreseeable to the defendant in jointly undertaken criminal activity. The Fifth Circuit took this same position in *United States v. Isiwele, 635 F.3d 196 (5th Cir. 2011).*

Defendant used mass marketing tools to build up the base upon which his fraud would be perpetrated. The mass marketing enhancement is therefore, properly applied to this defendant's conduct.

### 3553 CONSIDERATIONS

5. The government is unaware of any facts in this case that would warrant

a below guideline sentence. Under 3553, any sentence imposed on defendant should reflect the seriousness of his offense, afford adequate deterrence (both specific and general deterrence) to criminal conduct and protect the public from further crimes by the defendant.

                        Respectfully submitted,

                        DAVID CAPP
                        UNITED STATES ATTORNEY

BY:    /s/Diane L. Berkowitz
        Diane L. Berkowitz
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana  46320
        Tel:   (219) 937-5500
        Fax:  (219) 852-2770
        E-mail:  Diane.Berkowitz@usdoj.gov

## *Certificate of Service*

  I hereby certify that on May 26, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Scott King
sking@scottkinggroup.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None

            S/Teresa Torres
            Teresa Torres
            Legal Assistant